Flynn v. State.

## FLYNN v. STATE.

1.  CRIMINAL EVIDENCE:   *Res gestæ: Declarations.*

 In prosecutions for assault words uttered during the continuance of the main transaction or so soon thereafter as to preclude the hypothesis of concoction or premeditation, whether by the act-

19——43

ive or passive party, become a part of the transaction itself; and if relevant, may be proved as any other fact, without calling the party who uttered them; but declarations are not admissible until it is shown that the declarant was a participant in the transaction which the declaration is intended to explain or enlarge.

2.   CRIMINAL PRACTICE :   *Admissions of attorney at the trial, effect of.*
   A prisoner is not bound by the waiver or admission of his attorney at the trial unless it be distinct and formal and made for the purpose of binding the prisoner.

3.   CRIMINAL PRACTICE :   *Instructions.*
   A declaration by the judge in instructing the jury in a case of assault with intent to kill " that the prisoner is guilty of an assault with intent to kill or he is guilty of nothing," is error.

APPEAL from *Faulkner* Circuit Court.

Hon. F. T. VAUGHAN Circuit Judge.

*Jas. M. Pomeroy* and *R. A. Howard,* for appellant.

1.   In criminal cases counsel cannot bind a defendant by admissions, nor can he weaken nor impair the all-embracing force of the plea of not guilty. He cannot waive any of defendant's rights. 16 *Ark.*, 601; 17 *Id.*, 290; 20 *Id.*, 106; 21 *Id.*, 198 *Ib.*, 228; 22 *Id.*, 214.   No admission at the trial can be of any validity which is not made directly and with full attentive consent as a part of the record.   An express relinquishment of a right should appear before the party can be deprived of it.   16 *Ark.*, 605; 3 *Mass.*, 152; 18 *Johns.*, 218.

2.   Boicourt's testimony as to what Pruitt said was inadmissible as part of the *res gestœ.*   It was mere *hearsay.*   25 *Ark.*, 89.

3.   The court erred in instructing the jury that defendant was guilty of assault with intent to kill, &c., or nothing. Under our practice defendant may be found guilty of different degrees of an offense.   *Gantt's Dig.*, *Sec.* 1961-2-3;

*Lacefield v. State,* 34 *Ark.,* 275.

4. A party has a right to insist that a proper charge should be given in the terms in which it is asked, and if it is not, but the substance only given, it is error. 13 *Ala.,* 222, 231; 11 *Ala.,* 1059.

. *C. B. Moore,* Att'y Gen'l, *contra.*

1. Boicourt's testimony was admissible as part of the *res gestœ. Greenl. on Ev., Vol I. Sec.* 108; 12 *Ark.,* 782; 34 *Id.,* 720. Especially in view of the *admissions of counsel* that the *fact of the shooting was not denied* and *" that defendant planted himself on the right of self defense.*

2. It is competent for counsel to bind a client by admissions, when made distinctly and formally, and they have the effect of dispensing with formal proof. *Greenl. on Ev., Vol. I, Sec.* 186.

3. Some rights *cannot* be waived either by counsel or defendant, *i. e.* the right of trial by jury in felonies, and the cases cited for appellant are of that character.

4. The prayers of defendant refused were *cumulative* and are fairly covered by the general charge of the court. *Johnson v. Brock,* 23 *Ark.,* 283.

5. The *statement* by the court that in *this cause* the defendant was guilty of an assault with intent to kill, &c., or nothing, while perhaps unnecessary, is not seriously objectionable. Defendant had *planted himself on the right of self defense,* admitted the shooting, and there was nothing to indicate a *simple* or an *aggravated* assault. It was such an assault or nothing.

COCKRILL, C. J. Appellant was indicted in Pulaski County for an assault with intent to murder one Robert Pruitt. He was convicted in Faulkner County on change of venue and his punishment assessed at three years in the

1. CRIMINAL EVIDENCE. *Res gestae.* Declarations.

penitentiary. On the trial it was proved that in March, 1884, without provocation he fired three shots with a pistol from a point diagonally across the street from the front door of a hotel in Little Rock into the said door, while a number of men were standing in and about it. To sustain the issue that the shots were fired at Pruitt, for that was the charge in the indictment, the State introduced John Boicourt, who testified as follows:

"I was at Little Rock the Sunday morning of the shooting. I was in the lobby of the Capital Hotel. I was standing facing the door leading from the lobby of the hotel into the billiard room, talking with some gentlemen and we were just finishing the conversation when this crack came. I thought at first that some one had slammed the door very hard and broke the glass. Before I got to see the door something else sounded, and I distinguished the sound of a pistol, and ran back through the billiard room to a little alley way, to keep out of the line of the shots, and several other gentlemen ran back with me. It was so thick I could not get through. A little small man came running up on my right and said, 'He is shooting at me. Wm. Flynn is shooting at me.' He looked scared and I said 'Gaddy you, I am going to get out of your way.' "

Witness further stated that the little small man referred to was Robert Pruitt; and also that after the prisoner was arrested he informed Pruitt of that fact and saw him go off up stairs with his attorney.

There was no other testimony about Pruitt excepting that a *subpœna* for him had been returned not found, and there was nothing else tending to show upon whom the assault was made. Appellant in apt time objected to the testimony about Pruitt's statements, and the question of its admissibility is presented by the bill of exceptions.

It often becomes difficult to determine when declarations

Flynn v. State.

shall be received as part of the *res gestæ*. In cases like this words uttered during the continuance of the main action, or so soon thereafter as to preclude the hypothesis of concoction or premeditation, whether by the active or passive party, become a part of the transaction itself, and if they are relevant, may be proved as any other fact without calling the party who uttered them. And if the assaulted party should flee, as it is argued that Pruitt did here, what he says in his flight under the apprehension of immediate danger is admissible for the same reason. All declarations, however, must come from a participant in the transaction which the declarations are intended to explain or enlarge, to come within the rule. 1 *Greenl. Ev. Sec.* 108 *and note; Whart. Ev. Secs.* 262 *et seq.; Eveson v. Kinnaird,* 6 *East.,* 188 ; *State v. Davidson,* 30 *Verm't,* 377 ; *State v. Wagner,* 61 *Me.,* 193; *Com. v. Hackett,* 2 *Allen* 136 ; *Insurance Co. v. Moseley,* 8 *Wall.,* 397. The declarations of a by-stander are not admissible in evidence. Authorities, *Sup.; Bradshaw v. Com.* 10 *Bush.,* 576.

It is not necessary here to consider the exceptions to the rule. In this case there was nothing to show that Pruitt was a party passive or otherwise to the assault. All we know of him is that he was a good deal excited in the back part of the hotel billiard saloon where others had fled for safety. Whether he came there from the scene of action or was there from the first, we are not informed. It would not be safe to establish the rule that his declarations under such circumstances could be heard to establish his connection with the affair, and we have found no case going so far. In all the cases so far as we are advised there are circumstances or proof connecting the declarant with the passing events. The case is not unlike that of an agent with reference to the proof of his agency. The agent's declarations made in conducting his agency, are part of the *res gestæ*. But his bare declara-

tions cannot be proved to show the agency. That must be shown *aliunde.* *Grim* v. *Bonnell,* 78 *Penn. St.* 152.

And so if Pruitt were first connected with the main fact of the assault by testimony tending to show a participation n or connection with it, his statements made in conformity with the above. rules should be received to explain or strengthen that testimony, as well as to supply new and other-wise unproved elements of the *res gestæ.* Until he is linked with the affair in some way he is only a bystander and what he said is hearsay.

2. Admissions by Counsel at trial.

In his opening statement to the jury, appellant's counsel said something about the prisoner planting himself on the right of self-defence. There is some doubt as to what was said, but it is insisted that the statement was a confession or ad-mission of the shooting at Pruitt by the prisoner. We can-not so view it. Without determining what rights an attorney can waive for a prisoner on trial for a felony, we feel assured that the fact of the waiver or admission should be distinct and formal, and made for that purpose in order to bind the prisoner. 1 *Greenl. Ev. Sec.* 186.

3. CRIMINAL PRACTICE. Instructions.

Various instructions to the jury were given and refused by the court, and the giving and refusing of all these, except those given at appellant's instance, were objected to by him, and urged as grounds for a new trial. It would serve no useful purpose to discuss these in detail. It is sufficient to say that the law applicable to the case was clearly defined to the jury without prejudice to the appellant, unless it was in this, viz: In concluding the charge the court instructed the jury that if they found the appellant guilty they should assess his punishment at not less than three nor more than 21 years in the penitentiary, and "that in this case the defendant was guilty of an assault with intent to kill or that he was guilty of nothing."

In the case of Hopt v. Utah, on a trial for murder in the

first degree, the court made this statement to the jury :

"That an atrocious and dastardly murder has been committed by some person is apparent, but in your deliberations you should be careful not to be influenced by any feeling." The Supreme Court of the U. S., in 110 U. S., 582, had this to say of it : "It is clear that the observation by the court, that 'an atrocious and dastardly murder had been committed by some one,' was naturally regarded by them (the jury) as an instruction that the offence, by whomsoever committed, was murder in the first degree, whereas it was for the jury, having been informed as to what was murder by the laws of Utah, to say whether the facts made a case of murder in the first or second degree. * * * . It is expressly declared by the Code of Criminal Procedure that while he may ' state the testimony,' and 'declare the law,' he ' must not charge the jury in respect to matters of fact.' The error committed was not cured by the previous observation of the judge that by the laws of Utah the jury are the sole judges of the credibility of the witnesses and of the weight of the evidence, and of the facts. It is rather more correct to say, that the effect of that observation was destroyed by the statement at the conclusion of the charge, that the murder, by whomsoever committed, was an attrocious and dastardly one and therefore was, as the jury might infer, murder in the first degree."

The charge, in the case at bar, left the jury no room to " infer " anything in regard to the degree of the offence or the nature of the penalty, but cut them off from finding the prisoner guilty of any of the lower grades of assault, as they might have otherwise done. Under an indictment such as we have here, a prisoner may be convicted of any one of several very grave offences, an assault with intent to murder being the highest in degree, and he has the right to have the judgment of the jury upon the facts uninfluenced by any direction from the court as to the weight of evidence. The

people of this State have jealously guarded the right of the jury in this respect by declaring in the Constitution that judges shall not charge juries with regard to matters of fact, and while in this particular case the charge of the court was morally right, under the law it was error.

Reversed and remanded for a new trial.