*Ex parte* JOHNSON.

Opinion delivered November 8, 1902.

INDICTMENT FOR MURDER IN SECOND DEGREE—RESUBMISSION TO GRAND JURY—BAIL.—Where one held for murder is indicted for murder in the second degree upon evidence that warranted an indictment for the higher degree, the circuit court may, before trial, suspend procedings under such indictment and commit accused to jail without bail to await the action of the next grand jury.

Petition for bail.

Denied.

*Gustave Jones, Jos. M. Stayton* and *Jos. W. Phillips,* for petitioner.

*S. D. Campbell, Prosecuting Attorney,* and *George W. Murphy, Attorney General,* for State.

RIDDICK, J. In May, 1892, the defendant, Rufus Johnson, was committed to jail by a justice of the peace of Jackson county upon a charge of murder in the first degree committed by shooting one James Cole, to await the action of the grand jury upon said charge. The defendant then made application to the circuit judge in vacation for bail, but, after hearing the evidence, bail was refused. In July following the grand jury, after an investigation of the charge, returned into the circuit court an indictment against said defendant for the crime of murder in the second degree.

After the return of this indictment for murder in the second

degree, the prosecuting attorney filed a motion in the circuit court, in which he alleged, in substance, that the murder for which the defendant had been indicted was committed by lying in wait, and under circumstances which made it murder in the first degree, but that the grand jury had been misled or influenced to find an indictment for murder in the second degree only. He thereupon asked "that all proceedings under said indictment be suspended, and that the charge of murder in the first degree against the defendant be resubmitted to the next grand jury."

Before this motion was heard, the defendant filed an application to be admitted to bail, and the court took up and heard together both the motion to resubmit the charge of murder in the first degree to another grand jury and the application of the defendant to be admitted to bail. On this hearing the circuit court had before it all the evidence which had been adduced in the examining trial before the committing magistrate and in the hearing before the judge on the application for bail, as well as the minutes of the grand jury. On the application for bail the defendant was represented by counsel, and not only introduced witnesses, but testified himself in his own behalf. This evidence is set out in full, and, as neither party on the hearing of the application to refer the charge to another grand jury offered to introduce any further testimony, we take it that the record here presents all the evidence in the case that either party wished to introduce.

We need not set out this evidence. It is sufficient to say that there was evidence before the court which tended to show the following facts: Cole had become jealous of Johnson on account of attentions which Johnson had shown to Cole's wife. He had ordered Johnson to keep away from his (Cole's) house, and had made threats against him. Shortly before the killing, Cole, angered by the intimacy which he believed existed between his wife and Johnson, had assaulted and beaten her, and had afterwards surrendered himself to the constable of the township, and asked to be taken before a justice of the peace, that he might submit his case. They went together towards the house of the justice, Cole being armed with a gun. Before arriving at the house of the justice, they met Johnson, and thereupon Cole brandished his gun, and ordered Johnson to give the road, which he did. The constable then disarmed Cole, and thereafter kept the gun himself. Johnson went home, procured a Winchester rifle, and returned, and went into a

thicket near a house into which the officer and Cole had entered, and as they came from the house and passed near the thicket he shot at Cole twice. One bullet struck and passed through him, from which he died in a few minutes. Johnson's excuse for this act was that he thought Cole was trying to get the gun from the officer and shoot him, but the officer testified that, if Cole made any such attempt, he did not notice it. He also testified that after the shooting the defendant made admissions to him which showed that he had waited in the thicket for the purpose of killing Cole, and that the crime was deliberately planned and carried out.

After hearing this evidence, which is set out in the transcript at great length, and which, as before stated, seems to be all the evidence in the case, both for and against the defendant, that either side wished to present, the court held that the grand jury had misconstrued the law of self defense, and had erred in finding an indictment for murder in the second degree only under the facts in evidence. The court being of the opinion that the evidence against defendant made out a case of murder in the first degree, "that the proof of defendant's guilt was evident, and the presumption of his guilt great," it thereupon overruled the application for bail, and ordered the case to be sumitted to another grand jury to investigate the charge of murder in the first degree, and remanded the defendant to the custody of the sheriff to await the action of the next grand jury.

Defendant excepted to this ruling, and, the case having been brought to this court for review, he asks that the judgment of the court be set aside, and that he be permittted to give bail.

The only question in this case for our consideration is whether the circuit court had the right, notwithstanding the grand jury had ignored the charge of murder in the first degree, and returned an indictment for murder in the second degree only, to suspend proceedings under such indictment, and order the case to be submitted to another grand jury, and in the meantime, to commit the defendand without bail. We say that is the only question, for the reason that, if the court had the right, under the law, to make such an order in case of this kind, the facts here are such as would not warrant us to interfere with such discretion.

There are three sections of our code of criminal procedure which are found in Sand. & H. Dig., and which bear on the question under consideration, and which are as follows:

Section 2060. "The dismissal of the charge does not prevent it being again submitted to a grand jury, as often as the court may direct, but without such directions it cannot again be submitted."

Section 2061. "Unless an indictment be found at the term of the court next after the submission of the charge to the grand jury, the defendant shall be discharged from custody or exonerated from bail, unless for cause shown the court shall otherwise direct."

Section 2249. "If, during the trial, the court shall be of opinion that the facts proved constitute an offense of a higher nature than that charged in the indictment, it may direct the jury to be discharged and all proceedings to be suspended until the case can be resubmitted to the grand jury, and may order the defendant to be committed, or admit him to bail to answer any new indictment which may be found against him for the higher offense. If an indictment is not found for the higher offense before the next grand jury is discharged, the court must proceed to try the defendant on the original indictment."

It will be noticed that the last of these sections by its terms permits the court, even after a trial is commenced, when it appears from the facts proved that the defendant is guilty of a higher crime than that charged in the indictment, to discharge the jury, and suspend the proceedings until the case can be submitted to another grand jury; and in the meantime the court may commit the defendant or admit him to bail, as the court deems proper under the circumstances.

If the legislature intended to give the court such authority, even after a trial had commenced, and when there might be some question as to whether or not the defendant had been put in jeopardy, there is strong reason to believe that it did not intend to prevent the court from doing so before the trial commenced. If the court had such power only after the trial commenced, then, although the court had been informed and was convinced that the defendant was guilty of a higher grade of offense than the one charged in the indictment, it would still have to go to the trouble and incur the expense of putting the defendant on trial under the indictment before making the order to refer the charge to another grand jury. On a motion to refer the charge to another grand jury, the evidence could be heard by the judge as well before the trial as after it began, and a law that would require the judge to impanel a jury in order for him to hear evidence on a question

addressed to him only would certainly be an anomaly without the slightest reason to support it. We do not think such a charge can be successfully made against our statute. The language of the sections read shows, we think, that it expressly gives such power to the court, both before and after the commencement of the trial. Section 2060 provides that a dismissal of the charge does not prevent the court from ordering it to be submitted to another grand jury. Section 2061 states that, unless an indictment be found at the term of the court next after the submission of the charge to the grand jury, the defendant shall be discharged from custody, or exonerated from bail, unless for cause shown the court shall otherwise direct. This language plainly implies that for good cause shown the court may commit the defendant, and hold him without bail, until the case can be submitted to another grand jury, when no indictment is found.

Now, the action of the grand jury in this case in finding an indictment for murder in the second degree against one who was charged before them for murder in the first degree was, in effect, a dismissal of the charge as to murder in the first degree. The court then, under the statute quoted, had the authority, for good cause shown, to order the charge of murder in the first degree submitted to another grand jury, and in the meantime to commit the defendant, or admit him to bail, as the circumstances justified.

The purpose of the statute was to give the court some control over the grand jury in the matter of discharging persons charged with crime. This authority is not absolute, and could not be capriciously exercised by holding defendants when the facts did not warrant the exercise of the power. The judgment and orders of the court in such cases are subject to review, as other orders and judgments are. One of the sections read also provides that, if an indictment is not found for the higher offense before the next grand jury to which the case is resubmitted are discharged, the court must proceed to try the defendant on the *original* indictment. For these reasons we do not see any ground for apprehension that the power conferred by these sections will be used to oppress those charged with crime. On the contrary, it seems to be the part of wisdom to place some such check in the hands of the court over the action of the grand jury in those cases where, through mistake of law, or for favoritism, they refuse to indict for the grade of offense of which the defendant is guilty.

It is unnecessary for us to express an opinion on the facts of this case, for the defendant has not yet been tried, and we do not wish to prejudice his case. It is sufficient for us to say that we have examined the evidence carefully, and feel convinced that it was sufficient to uphold the action of the court in ordering the charge of murder of first degree against the defendant to be submitted to another grand jury, and in the meantime to commit the defendant without bail.

A majority of us are therefore of the opinion that the application of the defendant should be denied, and it is so ordered.

BUNN, C. J. (dissenting). The statute upon which the action of the circuit court proceeded in this matter read as follows, to-wit, (section 2249, Sand. & H. Dig.): "If during the trial, the court shall be of opinion that the facts proved constitute an offense of a higher nature than that charged in the indictment, it may direct the jury to be discharged and all proceedings to be suspended until the case can be resubmitted to the grand jury, and may order the defendant to be committed, or admit him to bail to answer any new indictment which may be found against him for the higher offense. If an indictment is not found for the higher offense before the next grand jury is discharged, the court must proceed to try the defendant on the original indictment."

This statute plainly contemplates that the opinion of the court is to be formed, not from the *ex parte* testimony before the grand jury by which the indictment is found, nor from the testimony before the coroner's jury, or a committing magistrate, but from the *testimony adduced on the trial;* and to my mind the reason is obvious. The testimony, except that on the trial, is more or less *ex parte,* and on the part of the state.

The court may and does, more frequently than otherwise, find this *ex parte* testimony more or less strong in support of the highest grade of the offense, simply because the testimony of the defendant is not yet fully developed, and this defensive testimony, more frequently than otherwise, puts a phase on the offense altogether favorable to the defendant. If this were not so, it would be an act of folly or supererogation on the part of the defendant to introduce any testimony at all in refutation of the charge or in mitigation of the punishment, which is the same thing as reducing the grade of the offense. This being true, the meaning of the legislature is

obvious. The circuit courts are authorized to suspend proceedings on the original indictment only when, after hearing the whole testimony *pro* and *con, on the trial of the case,* before the submission of the same to the jury, the court is of opinion that a higher offense has been made out than that charged in the indictment.

The object of the legislature was, it is true, to insure a more efficient administration of the criminal laws of the state, and to this end, it may be conceded that too great a leniency of grand juries was also sought to be provided against, and yet it was obviously the aim of the legislature to see that the rights secured to the citizen against unreasonable delays and mere persecution by sections 8 and 10 of article 2 of the Constitution should be most strictly and sacredly guarded. To say that "no person shall be held to answer a criminal charge except on the presentment or indictment of a grand jury," and yet permit the courts at will to control this absolute discretion of the grand jury by ignoring its action, is a proposition that can only be answered in the negative, and any statute seeking to place restrictions upon the grand jury must be most strictly construed and carefully measured by constitutional guaranties in favor of the citizen. Even a more liberal construction of the language of the section involved must be to the effect that the courts cannot interfere with the action of a grand jury, except upon the evidence adduced *on the trial, both for and against the truth of the charges* made in the indictment. A consideration of a part of the evidence will not justify the interference of the court.

There is no connection between the section upon which this action of the circuit court was based and section 2060, which authorizes the circuit court to submit a charge to a succeeding grand jury when one grand jury has ignored it when properly presented. It would doubtless be within the inherent power of the circuit court to resubmit any case referred to the grand jury by a committing court, or by the circuit court itself, where no bill is found, without the aid of a statute on the subject; but doubtful power of the court in such cases lies in the act of committing or holding the accused to answer the charge that may be made by a future grand jury. To accomplish this necessary end, the statute was mainly enacted for that kind of a case. But when an indictment is once found, the accused must be permitted to answer it with all necessary speed, and must not be harassed by changes of procedure which, in effect,

are intended to call in question the competency or integrity of the grand jury. As a general proposition of constitutional law, the state ought to be concluded by the action of its own grand jury.