NASH *v.* STATE.

Opinion filed December 24, 1904.

1. INDICTMENT FOR MANSLAUGHTER—RESUBMISSION TO GRAND JURY.—It was not error for the court to refer a charge of murder to a grand jury for investigation after the accused had been indicted by a previous grand jury for manslaughter. (Page 405.)

2.  TRIAL—REFERENCE OF CHARGE TO GRAND JURY IN DEFENDANT'S ABSENCE.—
    Defendant cannot complain that a charge of murder against him was
    referred to the grand jury for investigation in his absence if he had
    no objection to the competency of any member of the grand jury
    either on the ground that such member was a prosecutor or com-
    plainant on the charge against him, or was a witness on the part
    of the prosecution. (Page 405.)

3.  INDICTMENT—IMPEACHMENT BY GRAND JURY.—Under Sandels & Hill's
    Digest, section 2054, providing that "every member of the grand jury
    must keep secret whatever he himself, or any other grand juror,
    may have said, or in what manner he, or any other grand juror,
    may have voted on a matter before them," the testimony of the
    grand jurors who presented an indictment is inadmissible to show
    that only eleven of their number voted in favor of finding a true bill.
    (Page 405.)

4.  WITNESS—IMPEACHMENT.—It was error to allow a witness to be
    impeached by reading a part of the minutes of his testimony before
    the grand jury, in the absence of proof that he had read such testi-
    mony or heard it read, or that he had so testified.  (Page 406.)

5.  HOMICIDE—SELF-DEFENSE—INSTRUCTION.—An instruction that if the
    jury believed that defendant, at the time he went to a certain place,
    had reasonable grounds for believing that if he went there he
    would be attacked, and that he armed himself and went there, intend-
    ing and willing to enter into mortal combat, and that by going there
    armed he caused an attack to be made upon him, and that he so
    caused such attack with intent to kill, and that he killed deceased,
    "then, having voluntarily entered into the contest, he cannot claim
    the benefit .of the plea of self-defense, and you should find him
    guilty of murder in the first degree," was erroneous as excluding
    the plea of self-defense.  (Page 406.)

Appeal from Desha Circuit Court, Watson District.

ANTONIO B. GRACE, Judge.

Reversed.

*X. O. Pindall* and *Campbell & Stevenson*, for appellant.

The court erred in setting aside the indictment for man-
slaughter and referring the case to the grand jury of the February
term, 1903, in the absence of the defendant.   71 Ark. 47; 24 Ark.
620; 10 Ark. 318; 5 Ark. 431; Sand. & H. Dig. § 2067; 50 Ark.
542.   The court erred in refusing to allow the defendant to intro-
duce evidence to show that the indictment was concurred in by

only eleven grand jurors.  4 Greenleaf (Me.), 380; Sand. & H.
Dig. § § 2054, 2070; 36 Me. 128; 14 Pac. 768; 6 Abb. N. Cas.
33; 53 Ala. 481; Greenleaf, Ev. § 252; 63 N. C. 595.  The court
erred in refusing to continue the case. · Sand. & H. Dig. § §
2158, 5797; 16 Ill. 507; 92 Ky. 68; 69 Ark. 564.  The evidence
of Gray Dunn was improperly admitted.  69 Ark. 648.  The
court erred in commenting upon the evidence of Gray Dunn.  51
Ark. 147; 28 Fla. 113, 142; Underhill, Crim. Ev. § 215.  The
purported testimony of M. W. Quilling, Sr., before the grand
jury was improperly admitted.  Sand. & H. Dig. § § 2043, 2042,
2055.  It was error for the court to tell the jury that any verdict
reached after midnight could not be received until Monday morn-
ing. ´ 20 Enc. Pl. & Pr. 1194; 167 U. S. 178; 140 U. S. 118, 131.
It was error to refuse an instruction on the crime of manslaughter.
36 Kan. 497; 52 Kan. 335; 27 Tex. App. 16; 28 Tex. App. 542;
110 U. S. 582; 52 Ark. 345; 43 Ark. 289.  The court erred in its
charge upon the question of self-defense.  67 Ark. 605; 58 Ark.
57.  The court erred in defining what constitutes a reasonable
doubt.  69 Ark. 537.  The court erred in refusing to give instruc-
tion No. 7½ requested by defendant.  20 Tex. App. 665.

*George W. Murphy, Attorney General,* for appellee; *White
& Altheimer,* of counsel.

The indictment for manslaughter was properly set aside.  71
Ark. 50; Sand. & H. Dig. § § 2060, 2061, 2249, 2185.  The testi-
mony offered by defendant to show that only eleven members
concurred in the finding of the indictment was properly excluded.
Sand. & H. Dig. § § 2069-2073, 2126, 2054, 1752; Whart. Cr. Pl.
§ 379; 16 Conn. 457; 20 Mo. 238; 4 Denio, 133; 39 Ia. 318; 46
Ia. 88; 146 Ill. 197; 20 Mo. 345; 24 Ind. 156; 10 Enc. Pl. & Pr.
400; 31 Fla. 340; 29 Ill. App. 532; 4 Greene (Ia.), 125; 1 Kan.
313; 6 Met. 224; 2 Greene (Ia.), 270; 93 N. Car. 552; 1 Wash.
Ter. 409.  The doctrine of self-defense was properly declared.
69 Ark. 653.  The instruction on a "reasonable doubt" was
proper.  69 Ark. 537.

*X. O. Pindall* and ·*Campbell & Stevenson,* for appellant in
reply.

In dismissing the indictment for manslaughter, the defendant
should have been present.  44 Ark. 332; 5 Ark. 431; 10 Ark. 205;
24 Ark. 620, 629.

BATTLE, J. During the August term, 1902, of the Desha Circuit Court for the Western District of Desha County, the grand jury returned against Martin Nash an indictment for manslaughter, alleging that he, on the 20th of June, 1902, in said district and county, and in this State, unlawfully, wrongfully, feloniously, and upon a sudden heat of passion, killed James Cross, Jr., by shooting him with a shotgun, etc.

At the next February term, the said court referred the charge to the grand jury of that term, and they returned against appellant an indictment for murder in the first degree, alleging that he, in said district, county and State, on the 20th of June, 1902, unlawfully, willfully, feloniously, with malice aforethought, and with premeditation and deliberation, killed and murdered James Cross, Jr., by shooting him with a double-barreled shotgun, etc.

At the August term, 1903, of the court, the defendant filed a motion to set aside the second indictment, alleging, among other things, the following: "That on the 2d of February, 1903, the court, in the presence of the grand jury, stated that the grand jury, at the preceding term, found an indictment against him, charging him with manslaughter; that since then a warrant [affidavit?] charging him with murder had been filed with the judge of the court, and that he therefore referred the investigation of it to the grand jury of that term, the February term, 1903; that he, defendant, by his attorney, in the presence of the grand jury, objected and protested against the reference of said charge, on the ground that such action was taken in his absence, and without request of the prosecuting attorney, or any member of the last grand jury; that his objection was overruled; that all this was done while he was in prison, and prevented from being present, and that he by his attorney excepted. That he was not present in court at the February term, 1903, when the present grand jury was impaneled and charged, but was in prison and unable to attend. That the alleged indictment for murder, upon which he was then held, was not regularly or lawfully found, for the reason that only eleven members of the grand jury for the February term, 1903, voted for it, or concurred in finding it, and that he was ready to prove same." This motion, which concluded with an offer to prove all of its allegations, was overruled, and defendant excepted.

The defendant was arraigned upon the indictment for murder in the first degree, pleaded not guilty, and was tried before a jury.

Evidence was adduced in the trial tending to prove, among other facts, the following: On the night of the 18th of June, 1902, James Cross, Jr., was killed. A short time before the killing James C. Cross, the father of the deceased, and the defendant had an altercation, in which insulting language was used by both parties in reference to each other. On the night of the killing a steamboat landed at a certain place used for that purpose. Mrs. Cross, the wife of James C. Cross, the father, left on the boat to go to Pine Bluff. James C. Cross, and his and her sons, the deceased, Flournoy Cross and Clay Cross, were there to bid her goodbye, and to attend to business The defendant was there also. He was armed with a double-barreled shotgun, and the father and sons were armed with pistols. James C. Cross, the father, discovering that the defendant was there armed with a shotgun, accosted him in a rough way about coming there armed. The defendant made some response, and the discharge of firearms immediately followed, and James Cross, Jr., was killed. The evidence as to the commencement of the firing is conflicting. A part of it tended to prove that the defendant fired the first shot, and a part that the Crosses did so. Witnesses testified that the deceased took no part in the conflict, said nothing to the defendant, and made no attack upon him. The defendant testified that the Crosses shot at him first, and he returned the fire, turned and ran, without knowing that he had hit any one.

M. W. Quilling testified in behalf of the defendant. He testified that he was at the landing at the time the killing occurred, and heard, but did not see, the shooting; that "five or six pistol shots were first fired, then some gun shots, and then some more pistol shots;" and that, after he heard the "five or six pistol shots," he "heard two distinct reports of a shotgun, one right after the other;" that he is "positive" that he heard only "two shotgun reports." To discredit the witness, it was shown that he testified before the grand jury, and that his name signed to what purported to be his testimony taken before the grand jury was his signature, but he did not remember that the testimony

was read to him; and so much of it as is in the following words was read as evidence over the objections of the defendant: "At this time the negro was going toward the house. Cross, Sr., then turned toward the corner of the warehouse, and began working at his pistol, as if to see if it would work. He then walked out of the house, and then the shooting commenced quickly. There were six or seven shots fired, or pistol shots, then there were three gun shots that were fired; then more pistol shots were fired."

The court, over the objections of the defendant, instructed the jury, in part, as follows:

"25. If you should find, from the evidence, beyond a reasonable doubt, at the time the defendant went to the landing, he had reasonable grounds for believing that if he went there he would be attacked by Col. Cross, or some of his sons, or all of them, and that he armed himself, and went there, intending and willing to enter into mortal combat with them, and that by his acts and demonstrations he caused or provoked an attack to be made upon him, with intent then and there to kill either Col. J. C. Cross or one of his sons, and that he was so attacked, and that he killed the deceased, then, having voluntarily entered into the contest, he cannot claim the benefit of the plea of self-defense, and you should find him guilty of murder in the first degree."

And the defendant asked, and the court refused, to instruct the jury as follows:

"4. Manslaughter is the unlawful killing of a human being, without malice, either express or implied, and without deliberation. If you find in this case that the defendant, Martin Nash, at the time and place alleged in the indictment, fired the shot which resulted in the death of James Cross, and that in doing so the defendant acted voluntarily upon a sudden heat of passion caused by a provocation to a reasonable man sufficient to make that passion irresistible, and that this feeling was prompted by act of the deceased, or those acting with him; if such acts you find amounted to an apparently sufficient provocation to make this passion irresistible, you must then find that the killing was not murder in the first degree or second degree, and would amount to manslaughter, and you should so find. If you find

the defendant guilty of manslaughter, you should assess his punishment at not less than two nor more than seven years in the State penitentiary."

The jury found the defendant guilty of murder in the first degree; judgment was rendered accordingly; and he appealed.

1. The court committed no error in referring the charge against the defendant to a grand jury for investigation and action, after he had been indicted for manslaughter. Ex parte *Johnson*, 71 Ark. 47.

2. But the appellant says it was so referred in his absence, when he was in custody, and was entitled to be present. If present, he was entitled only to "object to the competency of any one summoned to serve as a grand juror * * * on the ground that he is the prosecutor or complainant upon any charge against" him, "or that he is a witness on the part of the prosecution, and has been summoned or bound in a recognizance as such." Sand. & H. Dig. § 2067. He does not allege or show that any such person was on the grand jury that found the indictment against him, and that he was prejudiced by his absence, and has a right to complain.

3. Appellant contends that the court erred in refusing to allow him to show by members of the grand jury that found the second indictment that only eleven grand jurors voted for it. Is this contention correct?

The statutes of this State require that the proceedings of a grand jury shall be in secret. They provide: "Every member of the grand jury must keep secret whatever he himself, or any other grand juror, may have said, or in what manner he, or any grand juror, may have voted on a matter before them." Sand. & H. Dig. § 2054. "A grand juror cannot be questioned for anything he may say, or any vote he may give, relative to a matter legally before the grand jury, except for a perjury he may have committed in making accusation, or giving testimony before his fellow jurors." Sand. & H. Dig. § 2056. And further provides: "Any grand juror who shall disclose any evidence given before the grand jury, except when lawfully required to testify as a witness, * * * shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not exceeding $100." Sand. & H. Dig. § 1752. Thus the statutes protect the

proceedings of the grand jury against publicity, and with especial care they prohibit the disclosure of the votes of the individual grand jurors on finding an indictment. It would be a violation of the policy evinced by these statutes and an invasion of the secrecy of the grand jury room to permit a grand juror to testify as to the number of the grand jurors that voted for an indictment. *State* v. *Gibbs,* 39 Iowa, 318; *State* v. *Mewherter,* 46 Iowa, 88; *State* v. *Fasset,* 16 Conn. 457; *Gitchell* v. *People,* 146 Ill. 175; 1 Bishop's New Criminal Procedure, § 874, and cases cited; and Wharton's Criminal Pleading and Practice (8th Ed.), § 379, and cases cited. The concurrence of twelve grand jurors is required to find an indictment. The presentation of an indictment to the court by the grand jury is evidence of such concurrence. This, if it can be, may be disproved, but not by the evidence of a member of the grand jury.

4. The court erred in permitting Quilling to be impeached as a witness by the reading of a part of what purported to be his testimony before the grand jury. It was not proved that he had read or heard such testimony read, or that he had so testified. Quilling was an important witness for the defendant, and his impeachment may have been prejudicial.

5. The court erred in giving the instruction numbered 25, copied in this opinion. According to it, if the jury believed, beyond a reasonable doubt, that the defendant, at the time he went to the steamboat landing, "had reasonable grounds for believing that, if he went there, he would be attacked by Col. Cross, or some of his sons, or all of them, and that he armed himself, and went there, intending and willing to enter into mortal combat with them," and that by going there armed he caused an attack to be made upon him, and that he so caused such attack with the intent then and there to kill either Col. J. C. Cross or one of his sons, and that he killed the deceased, they, the jury, should find him guilty of murder in the first degree; and they might so find, even if the defendant went there, carrying a shotgun solely for self-defense and did nothing more to provoke an assault, and killed the deceased for the purpose of saving his own life or preventing a great bodily injury. There was some evidence tending to prove such a state of facts. This instruction was clearly wrong and prejudicial.

6. The instruction as to manslaughter, numbered 4, and copied in this opinion should have been given. There was some evidence upon which to base it. But as the defendant was found guilty of murder in the first degree, it is evident that the failure to give it was not prejudicial. ·

Reverse and remand for a new trial.

HILL, C. J., did not participate.