KESTERSON *v.* STATE.

Crim. 3915

Opinion delivered March 4, 1935.

*A. J. Johnson, Jay W. Dickey* and *Hendrix Rowell,* for appellant.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* Assistant, for appellee.

BUTLER, J. Appeal from a conviction of murder in the first degree and punishment fixed at life imprisonment.

Error is assigned because of the court's refusal to admit certain testimony, for settling the instructions in the presence of the jury, and for refusal to give instructions as to the crime of voluntary manslaughter at the request of the defendant.

The homicide occurred at the home of George Kesterson, Sr., where a dance was in progress, the deceased and a number of other young men being present. One of the number, Calvin Brown, was stabbed and killed. George Kesterson, Jr., was not at home at that time, but met the truck in which the boys were leaving some distance from the residence of his father. In relating what occurred when he met the boys in the truck, he was asked if they told him that a boy had been killed down at his house. Objection was interposed to this question, which was sustained by the court. The witness answered, however, "They didn't say it was at the house." The court admonished the witness not to answer the question and again sustained the objection, but did not tell the jury to disregard the answer. Exceptions were saved to the action of the court.

It is argued that this testimony tended to discredit the testimony of some of the young men who were riding in the truck, to the effect that they had seen appellant stab Brown. We are unable to appreciate the force of this argument for there is no dispute as to the fact that Brown was actually stabbed on the porch of the Kesterson home and died in the yard.

During the progress of the trial the jury was kept under the custody of the sheriff. After both sides closed the case on Monday night, September 24, 1934, the court conferred with counsel and concluded that it was too late to finish the case that night. The jury was accordingly left in the custody of the sheriff and instructed to report the next morning. When court convened on that morning, the defendant offered to call a deputy sheriff in rebuttal to the testimony offered by one Clyde Bradshaw, on behalf of the State. This witness had testified that about the time, or just after Brown was stabbed, the appellant (defendant) stated to witness: "I got him." The officer was questioned and stated in effect that he had

talked with the boys who accompanied Brown to the Kesterson home, who had testified for the State, shortly after the killing, and that they had told him that a boy had been killed at Kesterson's, that one of them, Victor Railey, in answer to the question as to who had killed Brown, said that "it lay between old man Kesterson, Lester Cogbill and Robert Kesterson" (appellant); that this statement was made in the presence of Clyde Bradshaw and that Bradshaw did not deny the statement.

The court refused to permit the case to be reopened, stating that both sides had closed the case on Monday night, and that all the witnesses had been excused. The bill of exceptions contained no statement to this effect, but the statement of the court was not disputed and doubtless correctly stated the facts.

In this state of the case, the question of whether or not the case should be reopened was within the discretion of the trial court, and its action will not be disturbed unless there is clearly an abuse of discretion. *Moss v. Adams,* 32 Ark. 562; 26 R. C. L., Trial, § 48.

It will be observed that the desired testimony of the officer did not rebut the statement made by the witness Bradshaw to the effect that the appellant had said: "I got him"; nor is there any material matter that would have been testified to by him not already in evidence. The trial court therefore did not err in refusing to reopen the case.

It appears that on Tuesday morning, September 25, 1934, the court and the attorneys seated themselves at a table in the courtroom to settle the instructions. This table was only a short distance away from the jury box in which some of the jurors were seated while the instructions were being discussed. One of the assignments of error in the motion for a new trial was this action of the court, and that it was over the objection of the defendant. The bill of exceptions does not show that any objection was interposed to the action of the court in settling the instructions at the table, or to a remark said to have been made by the court in the presence of the jury to the effect that the case could not involve manslaughter, that he would refuse an instruction on that degree of

homicide, that "it was only a matter of first or second degree murder under the proof," and that the court did not at that time mention that the jury could acquit under the testimony. .

As noted, there were no objections preserved in the record or exceptions saved. Furthermore, from the testimony taken on the motion for a new trial, it developed that the conversation was in a low tone, and no one who testified relating to it stated that they heard the conversation or understood its effect. Only one of the jurors was called who stated that he saw the court and counsel seated at the table passing papers back and forth between them; that he could see that they were engaged in conversation, but could not hear it. We are of the opinion that no error was committed by the court in this regard.

The only question presented by the appellant which gives us pause is the refusal of the court to instruct on voluntary manslaughter at appellant's request. There was evidence to the effect that Calvin Brown was standing on the porch of the Kesterson home, making no hostile demonstration, and that the appellant, without apparent provocation, inflicted the stab wounds upon him with a knife, causing his death. This evidence was sufficient to warrant the verdict of the jury. There was some evidence, which, if believed by the jury, would have warranted a finding that the homicide was committed under a provocation sufficient to reduce the offense to manslaughter. It appears that Robert Kesterson, the appellant, is a young married man and was present with his wife at the home of his father on the night of the homicide. There is evidence that those who came in the truck, including Brown (the deceased), were more or less under the influence of whiskey and became disorderly and a disturbing element at the party; that just before the homicide appellant and his wife were coming up the steps leading to the porch, when Brown took hold of the wife and pushed her with violence; that immediately appellant was seen struggling with some women who were attempting to hold him; that he broke loose from them and stabbed Brown. There is some evidence that Brown and the appellant engaged in a fight. It was the duty

of the court, there being evidence of this character, to give a charge on voluntary manslaughter when requested to do so. *Flynn* v. *State*, 43 Ark. 289; *King* v. *State*, 117 Ark. 82, 173 S. W. 852; *Adkisson* v. *State*, 142 Ark. 34; *Collins* v. *State*, 102 Ark. 80, 143 S. W. 1075. The court had, however, already given the following instruction:

"The distinction between murder in the first degree and murder in the second degree lies in the element of premeditation and deliberation. If the killing be wilful, unlawful, malicious, felonious and in pursuance of a pre-conceived design to kill the deceased, formed in the mind of the slayer after deliberation, and not committed in self-defense or by reason of a provocation received at the time of the act, or immediately before it, which would reduce it to manslaughter, then it would be murder in the first degree; but if the killing be wilful, malicious, un-lawful and felonious, not in the heat of passion caused by a provocation given at the time and apparently sufficient to render the passion irresistible, but without premeditation and deliberation, it would then be murder in the second degree."

By this instruction the jury was told, in effect, that it was not proper for it to convict the defendant of murder in either degree if the deceased was killed in self-defense or on account of a sudden heat of passion caused by provocation given at the time to apparently render the passion irresistible. Upon this charge the jury returned a verdict of guilty of murder in the first degree, and fixed the punishment at life imprisonment in the State penitentiary. The necessary effect of this verdict was to find that the homicide was not committed in a sudden heat of passion because of a provocation apparently sufficient to render the passion irresistible. That this was the finding of the jury is emphasized by the fact that its verdict found the defendant guilty of murder in the first degree when, under the instruction quoted, it might have returned a verdict for murder in the second degree. This indicates that the jury found no provocation, but also that no circumstance of mitigation existed by which the punishment should be abated to that prescribed for a lesser degree. Thus it appears from the verdict, based

on the instruction given, that a state of facts was found to which the rejected prayer would have been inapplicable, and that the same verdict would have been rendered, although the prayer had been granted. Therefore the error was not prejudicial. This conclusion is reached upon the authority of *Farris* v. *State,* 54 Ark. 4, 14 S. W. 924; *Nash* v. *State,* 73 Ark. 399, 84 S. W. 497; *Jones* v. *State,* 102 Ark. 195, 143 S. W. 907. In all of these cases an instruction was requested on voluntary manslaughter, and refused by the court where there was evidence to warrant the submission of that issue to the jury. But the instructions given on murder in the first and second degrees contained language similar to that quoted, *supra,* which the court held made it necessary for the jury to pass upon the question whether the homicide was the result of a sudden heat of passion, and that the verdict for a higher degree of homicide necessarily implied the finding that no provocation existed to cause the sudden heat of passion which would reduce the crime from murder to manslaughter; and that, while the court should have given the instruction, no prejudice resulted to the defendant by reason of the refusal.

As no prejudicial error appears, the judgment of the trial court is affirmed.