JONES v. STATE.

Opinion delivered February 5, 1912.

1. HOMICIDE—SUFFICIENCY OF PROOF OF MURDER.—Testimony that defendant and another were shooting and cursing while passing along the highway, that defendant, who was a deputy sheriff, warned them that if they did not stop the shooting and cursing he would arrest them, that they cursed him and shot again, that he went to arrest them, and told them to halt whereupon defendant shot him, is sufficient to sustain a conviction of murder in the first degree. (Page 198.)

2. APPEAL AND ERROR—HARMLESS ERROR.—Where, in a prosecution for murder in the first degree, the court correctly instructed the jury as to murder in the first and second degrees, and the jury found defendant guilty of murder in the first degree, the court's refusal to instruct as to the offense of manslaughter could not have been prejudicial. (Page 200.)

Appeal from Lee Circuit Court; *Hance N. Hutton,* Judge; affirmed.

*C. E. Daggett,* for appellant.

1. There was no proof of malice nor premeditation, and the evidence does not support a conviction of murder in the first degree. 82 Ark. 97.

2. The court should have instructed as to manslaughter. 74 Ark. 444, 453; 162 U. S. 313; 156 *Id.* 51; 50 Ark. 545; 73 *Id.* 126; 71 *Id.* 86; 5 *Id.* 545.

*Hal L. Norwood,* Attorney General and *Wm, H. Rector,* Assistant, for appellee.

1. There is no evidence to reduce the offense to manslaughter.

2. The testimony supports the verdict.

HART, J. This is an appeal from a judgment convicting the defendant, Arthur Jones, of murder in the first degree, for killing M. E. Yarbrough. Mrs. M. E. Yarbrough testified:

"I was the wife of M. E. Yarbrough, and he was killed about dusk or dark on the 30th of September, 1911. We lived

on a hill about a mile from Marianna. About 7 o'clock that evening my husband and I were sitting on the porch playing with our two children. We heard some negroes coming down the road in a buggy. They were cursing and shot once. My husband got up and holloed at them to stop. He said that if they did not stop that shooting and noise he would arrest them. They answered with a curse word, and again shot up the hill. By this time they had got into a deep cut where they could not be seen. Mr. Yarbrough got his gun and went down to meet them when they got to the top of the hill. He was going to arrest them, and I went with him. When he got out to the road, he said: 'Halt!' and one of them said 'Shoot, you white-eyed s— of a b——!' One of the negroes shot Mr. Yarbrough twice, and Mr. Yarbrough shot at them twice. He fell on his knees, and holloed that he was shot. I called for help, but no one else seemed to be on the road. I dragged my husband back to the house, and it was about an hour before I got any help. My husband died the next morning at 4 o'clock. We could see the negroes when they first commenced shooting, and my husband told them that if they did not stop he would arrest them. They were about one hundred yards away when we first saw them. I saw them make the first two shots, and after that, as above stated, they disappeared in the cut, and I did not see them any more until they got to the top of the hill, and shot my husband when he tried to arrest them."

M. H. Ford testified: "I am sheriff of Lee County. M. E. Yarbrough was my deputy at the time he was killed, and had been for about six years. On the same night after the killing, the defendant voluntarily made a confession to me. He said that he had pulled out his pistol at the branch, and had tried to see if it would shoot. He said that when he got to the top of the hill, some one spoke to him, and that his companion said: 'Shoot him!' and that he, the defendant, at once shot Mr. Yarbrough. The defendant, at the time he made the confession, was wounded, and was in a physician's office."

Doctor McClendon testified: "I visited Mr. Yarbrough on the night he was shot. He had two wounds on the arm which shattered his elbow and severed the brachial artery, and the other was on his left hip. The wound in the hip went through the small intestines, and there were eight perforations

through the small bowels. His death was due to hemorrhage resulting from the gun shot wounds. He said that some people came down the hill cursing and shooting, and that he picked up his gun and went out to arrest them. He said when he got out there and told them to halt, one of them said: 'Shoot him!' and the shooting began.''

The defendant testified as follows: ''That he was in Marianna on the 30th of September, 1911, and that he left town in John Collins's buggy; that when he got to Calvin branch he and Collins were talking about the many robberies that had recently occurred along the road; that he took out a pistol that had been pawned to him and shot down in the road to see if the pistol would shoot, and then put the pistol in a sack in the buggy; that when he got up to the top of the hill some one holloed, 'Halt!' and he told Collins to drive on, and Collins said: 'Shoot him! shoot him!' and he reached down and got the pistol, but before he could get it up the man had fired, and the shot hit him in the hip and belly; that he could only see the smoke and shot out where the smoke was; that they drove on up the road, and he got sick and came on back to the oil mill and laid down, and Collins came to town and got a buggy and carried him to the doctor; that he only shot one time at the bridge; that he did not hear anybody hollo at him when he was down by the bridge; that the first time that he saw Mr. Yarbrough was when he came out and told him to halt; that he did not shoot until he was shot; that he did not know Mr. Yarbrough; that he did not know there was a house located where Mr. Yarbrough's is; that it is not true that either of them was using loud and ugly language; that Mr. Yarbrough did not hollo to them and tell them that if they did not stop he would arrest them; that it was dark before they left town; that he never saw Mrs. Yarbrough at the scene of the killing; that Yarbrough said nothing but 'Halt!' ''

It is first earnestly insisted by counsel for defendant that the evidence did not warrant a verdict of murder in the first degree, but we can not agree with their contention. A careful consideration of the evidence on the part of the State shows the jury were warranted in finding that this was a premeditated and deliberate killing. Mrs. Yarbrough testifies that the negroes were cursing and shooting along the public highway;

that her husband saw and heard them, and warned them that if they did not stop he would arrest them. They cursed him and again fired. He went out to arrest them; and when he announced his purpose to them, one of them called him a vile epithet, and said "Shoot!" The other at once shot him. So it will be seen that the jury had a right to infer that all that was done and said was a part of the same transaction, and Yarbrough informed the defendant that he was about to arrest him, and the defendant without any provocation shot and killed him. From the evidence of the State, the jury might have inferred from the acts and conduct of the defendant that he intended to take the life of Yarbrough, and that the killing was done with premeditation and deliberation. Therefore we are of the opinion that the verdict was warranted by the evidence. *Howard* v. *State*, 82 Ark. 102; *Beene* v. *State*, 79 Ark. 460.

The court correctly instructed the jury on murder in the first degree and murder in the second degree and on the subject of reasonable doubt. No objection is made by counsel for the defendant to these instructions. In addition the court instructed the jury as follows:

"If, after you have considered all of the facts, you have reasonable doubt as to the defendant's guilt of any grade of offense, you will acquit him, and the form of your verdict will simply be, 'We, the jury, find the defendant not guilty.'

"You are further instructed that you can not find the defendant guilty of murder in the first degree unless you find from the evidence that at the time the fatal shots were fired there was a specific intent existing in the mind of the defendant to take the life of the deceased, and that the shots were fired by him with that purpose, and that such purpose was formed deliberately and premeditatedly, and that the mind of the defendant was fully conscious of the design to kill and was not the immediate offspring of rashness, negligence, or impetuous temper.

"You are instructed that it is the duty of an officer in making an arrest without a warrant to state to the defendant that he is an officer, and his purpose to arrest them, and if in this case the jury find that the deceased stepped to the side of the road and with a gun drawn called, 'Halt!' or 'Hold up!' with nothing further, the defendant would have a right to resist."

The record then shows that the defendant requested the

court to instruct the jury on the law of manslaughter, which the court refused to do. The refusal of the court to give any instruction on manslaughter is assigned by the defendant as error. Under the testimony given by the defendant, the jury might have believed that he shot Yarbrough under the belief that he was about to be assaulted by Yarbrough, but that he acted too hastily and without due care, and was therefore not justified in taking life under the circumstances. Under this view of the testimony the defendant was entitled to an instruction on voluntary manslaughter. *Allison* v. *State*, 74 Ark. 444.

The record does not disclose whether or not the defendant presented to the court proper instructions on manslaughter, but simply shows that the defendant asked the court to instruct the jury on manslaughter, which the court refused to do. Assuming, without deciding the question, that it was the duty of the court, under this state of the record, to have instructed the jury on voluntary manslaughter, we are of the opinion that the error was not prejudicial, and it is well settled in this State that the judgment will only be reversed for errors that are prejudicial to the rights of the defendant. *Lee* v. *State*, 73 Ark. 148; *Hayden* v. *State*, 55 Ark. 342. It will be noted from the instructions given by the court and copied above, that the jury were told that they could not convict the defendant at all if they had a reasonable doubt as to his guilt of any grade of offense, and that they could not convict him of murder in the first degree if the killing was the immediate offspring of rashness, negligence or an impetuous temper. The court also told the jury that it was the duty of an officer making an arrest without a warrant to state to the defendant that his purpose was to arrest him, and that if it should find that the deceased stepped to the side of the road with a gun drawn and called "Halt!" with nothing further, the defendant had a right to resist him. The jury returned a verdict of murder in the first degree, thereby finding that the killing was not the result of rashness, negligence or impetuous temper on the part of the defendant. It is admitted that the court correctly instructed the jury on murder in the second degree, and the jury might have found the defendant guilty of that offense if it had believed the testimony of the defendant. Hence it will be seen that the jury found a state of facts to which an instruction of manslaughter would be in-

applicable, and it becomes certain that the same verdict actually would have been rendered if the court had instructed the jury on manslaughter. The case is ruled by *Farris* v. *State*, 54 Ark. 4. There the court held:

"An error in rejecting a prayer for an instruction is not prejudicial if it appears that the jury found a state of facts to which it would have been inapplicable. Thus, where the court charged that defendant could not be convicted of murder in the second degree if he killed deceased in self-defense or in a sudden heat of passion upon provocation apparently sufficient to make the passion irresistible, and the jury found him guilty of murder in the second degree, and assessed his punishment at the longest term of imprisonment allowed by law for the offense found, the court's refusal to instruct as to the offense of manslaughter could not have been prejudicial, though there was evidence tending to establish manslaughter." See also *People* v. *O'Neil*, 67 Cal. 378; *Baker* v. *State*, 58 Ark. 513.

The judgment will be affirmed.

KIRBY, J., dissents.