## GUERIN *v*. STATE.

### Opinion delivered October 2, 1922.

1.  HOMICIDE—INSTRUCTION AS TO VOLUNTARY MANSLAUGHTER—EVIDENCE.—Under Crawford & Moses' Dig., § 2355, where there was no testimony tending to prove that defendant killed deceased upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible, the failure to charge on voluntary manslaughter was not error.

2.  HOMICIDE—INSTRUCTION AS TO INVOLUNTARY MANSLAUGHTER.—On a trial for murder, evidence *held* to warrant a finding that defendant killed deceased in the prosecution of a lawful act done without due caution and circumspection, and hence to entitle defendant to an instruction on involuntary manslaughter, under Crawford & Moses' Dig., § 2356, if it had been requested.

3. CRIMINAL LAW—INSTRUCTION—NECESSITY OF REQUEST.—Where defendant in a murder case asked no instruction on involuntary manslaughter, he could not complain of the court's failure to charge thereon.

4. HOMICIDE—FAILURE TO CHARGE—HARMLESS ERROR.—Where, in a murder case, the court charged the jury to acquit the defendant unless the killing was intentional, failure to charge that, if the killing was unintentional, but done in the performance of a lawful act without due caution and circumspection, defendant might be convicted of involuntary manslaughter, was not prejudicial, as the error was to defendant's advantage.

5. CRIMINAL LAW—OBJECTIONS TO INSTRUCTIONS.—Where, though instructions complained of were open to criticism and did not state the law as clearly as they should, they were not, when considered as a whole, inherently erroneous and prejudicial, objections thereto should have been raised specifically before the trial court.

6. HOMICIDE—INSTRUCTION AS TO MURDER IN SECOND DEGREE.—An instruction that, if the evidence showed beyond a reasonable doubt that the killing was committed by defendant and nothing more was proved, this would justify a verdict of murder in the second degree, but that, if the evidence tended to show that the killing was not intentional, and the jury believed that it was not wilfully done, or entertained a reasonable doubt as to whether it was wilful, defendant would not be guilty of any degree of murder, *held* not erroneous, when considered with other instructions, as telling the jury that it was sufficient to constitute murder in the second degree if it was shown that defendant killed deceased.

7. HOMICIDE—INSTRUCTION—MURDER IN SECOND DEGREE.—An instruction that if the jury believed beyond a reasonable doubt that defendant killed deceased, and the evidence was not sufficient to raise a reasonable doubt as to whether or not the killing was intentional, they would be justified in finding defendant guilty of murder in the second degree, was not erroneous when considered with other instructions, as authorizing a conviction of murder in the second degree, though the jury had a reasonable doubt as to whether the killing was intentional.

Appeal from Garland Circuit Court; *Scott Wood,* Judge; affirmed.

*Martin, Wootton & Martin,* for appellant.

*J. S. Utley,* Attorney General, and *Elbert Godwin,* Assistant, for appellee.

Wood, J.   Ben L. Guerin, on or about the 10th day of April, 1921, in the city of Hot Springs, Garland County, Arkansas, killed one Charles Logan with a shotgun loaded with buckshot. Guerin was about sixty years of age and without a family. He operated a store in Hot Springs at the corner of Pleasant and Silver streets, in which he also lived. Logan, who was a middle-aged man and without a family, boarded with Mrs. Rookard across the street from the store about seventy feet away. At the time of his death he was clerking for Guerin. He had been working for Guerin in this capacity for about eight weeks prior to his death. Guerin had been acquainted with Logan for some two years or more, and there was testimony tending to prove that they were warm friends. They were both heavy drinkers, and on the night previous to the killing they had been drinking together, and also on the morning of the killing. The killing occurred on Sunday morning. About eight or nine o'clock on that morning Guerin and Logan, with two boys, went in appellant's car into the country near the river for the purpose of locating a fishing camp where they proposed to spend a week or more. Guerin was crippled so that his locomotion was impaired. Logan and one of the boys placed Guerin in his car. Guerin and Logan sat on the back seat and the young men on the front seat. On the trip to the river and return both Guerin and Logan were drinking heavily and were drunk. The parties returned to Guerin's store about 11:30, where the young men left them. A short time thereafter loud talking was heard in the store. One of those engaged in the conversation was talking in a low tone, and the other was talking in a loud tone. Witness who heard this conversation stated she thought she heard the one talking in a loud tone say, "Get away from that door." Witness thought from the language used by the parties that they were engaged in a fuss. Witness stated: "By the time we got in the house and turned around a gun fired, and I thought it was somebody threw a rock against the house." Immediately after hearing this noise witness saw Guerin, half bent,

coming around from towards the front door of the store and saw him go around to the side of the store and fall on the ground. Soon after that some one came along and assisted Guerin into his car.

After Guerin got in his car he was asked where Logan was and he stated that he was up town, and that he (Guerin) was going after him and would be back in a few minutes. He drove out of town some distance, and there was a collision between his car and another car. Guerin told certain parties who gathered around at that time that he had killed a man and was making his "get-away" and wanted them to take him out to Hiram Irwin's, who lived six or seven miles in the country. These parties refused to do so, believing that his conversation resulted from his drunken condition. On the way back to town Guerin stated several times that he had "killed this fellow" and wanted to go by and get the sheriff. He stated that he had "shot his head off." Witness thought he stated that he shot the party with a shotgun loaded with buckshot. One of the witnesses stated that Guerin stated to him on that occasion, "Yes, I killed old Logan—I shot the damned son-of-a-bitch's head off with buckshot."

The testimony adduced on the part of the State is quite voluminous, and we deem it unnecessary to set it all forth. The above is substantially the testimony upon which the State relies to sustain the verdict.

The defendant testified in his own behalf, and his testimony tended to prove that he and Logan were fast friends and had never had any trouble or difficulty of any kind. He explained the killing substantially as follows: That when they were in the store together they were fixing their fishing tackle, and that he had some tackle in a sack; that Logan had intended loading the fishing tackle in the car while appellant prepared some dinner for them to take with them; that he had a gun on the premises, and that the same had been there for seven or eight years; that he kept it in a corner in the back end of the store; that Logan was preparing to take

some fishing tackle out to put in the car; that as he started out the door, witness told him to wait a minute and asked him to take the gun along and put that in the car, and that in taking up the gun to hand it to Logan in some manner it was discharged. Witness did not know what caused it to go off unless in picking it up it struck the table or something. Appellant's testimony further tended to prove that he was very drunk, and on that account could not remember all that happened either immediately before or after the shooting.

The court, after correctly defining "murder" and its degrees, gave, among other, the following instructions:

"8. In other words, if the evidence should show beyond a reasonable doubt that the killing was committed by the defendant, and nothing more is proved, this would justify a verdict of murder in the second degree; but if the evidence goes further, and there is evidence adduced which tends to show that the killing was not intentional, and the jury, after considering all of the evidence, believe that it was not wilfully done, or entertain a reasonable doubt as to whether or not it was wilful, then the defendant would not be guilty of any degree of murder."

"9. If you believe from the evidence beyond a reasonable doubt that the defendant killed the deceased, Chas. Logan, and you further believe from the evidence beyond a reasonable doubt that the killing was wilful, that is, that the defendant shot the deceased intentionally and not accidentally, you should find him guilty of murder."

"10. If you believe from the evidence beyond a reasonable doubt that the defendant killed the deceased, and the evidence introduced is not sufficient to raise in your mind a reasonable doubt as to whether or not the killing was intentional, then you would be justified in finding the defendant guilty of murder in the second degree."

"11. If the evidence convinces you beyond a reasonable doubt that the defendant killed the deceased wilfully and after premeditation and deliberation, then you

should find the defendant guilty of murder in the first degree.''

"12. If, after fully and fairly considering all of the evidence, you entertain a reasonable doubt as to whether or not the defendant killed the deceased accidentally and without intending to kill, then you should find the defendant not guilty.''

"13. But if you are convinced from the evidence beyond a reasonable doubt that he did intentionally kill the deceased, you should find the defendant guilty of either murder in the first degree or murder in the second degree.''

The defendant's counsel interposed a general objection to each of these instructions. They did not object specifically to any of them and did not request any instructions. Defendant was convicted of the crime of murder in the second degree and sentenced to five years' imprisonment in the State Penitentiary.

1. There is no testimony tending to prove that the appellant killed Logan upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible. The court, therefore, did not err in failing to instruct the jury on voluntary manslaughter. Sec. 2355, C. & M. Dig., and cases there cited. This learned counsel for the appellant frankly concede, but they contend that there was testimony from which the jury, at most, could only have found that the appellant killed Logan in the prosecution of a lawful act done without due caution and circumspection, and that therefore appellant was entitled to an instruction on involuntary manslaughter. Counsel for appellant are correct in this contention. See sec. 2356, C. & M. Digest. If the appellant had prayed the court for such an instruction and the court had refused the prayer, then such ruling of the court would have been erroneous and prejudicial to the appellant. Appellant, however, did not ask the court to instruct the jury on involuntary manslaughter, and he is therefore not in an attitude to complain on account of the

failure of the court to so instruct. *Graves v. State, ante*
p. 30; *Hayes* v. *State,* 129 Ark. 324, and cases there cited.

Moreover, the court, under correct instructions, sub-
mitted the issue to the jury as to whether or not the kill-
ing was intentional, and instructed the jury in effect that
unless the killing was intentional they should acquit the
defendant. No prejudicial errror therefore can be pred-
icated upon the failure of the court to instruct the jury
that, if the killing were unintentional, but done in the
performance of a lawful act without due caution and
circumspection, the appellant might be convicted of in-
voluntary manslaughter. The failure of the court to
instruct on involuntary manslaughter, under the circum-
stances, was to appellant's advantage rather than to his
prejudice. *Outler* v. *State,* 154 Ark. 598; *Jones* v. *State,*
102 Ark. 195.

2. Counsel for the appellant contend that instruc-
tions Nos. 8 and 10 are erroneous and prejudicial; that
instruction No. 8 is erroneous for the reason that it does
not instruct the jury that, before they could find the de-
fendant guilty of murder in the second degree, they
would have to find that the act resulting in the killing was
wilful and intentional and also malicious; that instruction
No. 10 is erroneous and prejudicial for the reason that it
relieves the State of the burden of proving beyond a
reasonable doubt that the killing was intentional and
places the burden on the defendant of raising in the
minds of the jury a reasonable doubt of his guilt. These
instructions, 8 and 10, are open to criticism and do not
state the law as clearly as they should, but the objections
which counsel now urge should have been raised specifi-
cally before the trial court. For, after a careful consider-
ation of the testimony upon which the charge was
grounded, we are convinced that, when all of the instruc-
tions are taken as a whole, as they must be, the two in-
structions indicated were not inherently erroneous and
prejudicial. Because instructions 9, 11, 12 and 13, in
effect, tell the jury that, unless they believe from the evi-

dence beyond a reasonable doubt that the killing was
wilful, that is, intentional, they should find the defendant
not guilty. When these instructions are read in connec-
tion with instructions 8 and 10, it is manifest that the
court did not intend to tell the jury in instruction 8 that
it was sufficient to constitute murder in the second degree
if it were merely shown that the defendant killed Logan;
nor, in instruction 10, that they could convict the defend-
ant of murder in the second degree if they had a reason-
able doubt as to whether the killing was intentional.
While instruction No. 10, considered alone, may be sus-
ceptible of that construction, yet it is manifest that,
when taken in connection with those immediately preced-
ing and following it, such was not the court's meaning,
and appellant should have directed the attention of the
court to the error of which he now complains by spe-
cific objection. While instruction No. 10 is not happily
phrased, yet, it occurs to us that the court meant to tell
the jury in this instruction that, if they believed from
the evidence beyond a reasonable doubt that the defend-
ant killed the deceased, and believed from the evidence
beyond a reasonable doubt that the killing was inten-
tional, they would be justified in finding the defendant
guilty of murder in the second degree. In other words,
the instruction, correctly understood, required the jury
to believe from the evidence beyond a reasonable doubt
that the killing was intentional, before they would be
justified in finding him guilty of murder in the second
degree.

Now, the testimony on behalf of the State tended to
prove that the appellant killed Logan and that the kill-
ing was intentional. The jury might have found that the
killing was intentional from the testimony tending to
show that there was loud talking and that the parties in
the store were engaged in a fuss. Also, from the testi-
mony of the declarations of the appellant, himself, im-
mediately after the killing, to the effect that he had
"killed old Logan"—that he shot the "damned son-of-a-

bitch's head off with buckshot." As we have already
stated, there was no testimony on the part of the State
tending to show that the killing only amounted to man-
slaughter, or that the accused was justified, or that he
should be excused in committing the homicide. The testi-
mony adduced on behalf of the defendant tended to show
that the killing was unintentional. Such being the testi-
mony adduced on behalf of the State and the defendant,
we are convinced that it was the purpose of the court, in
its charge, to submit to the jury the clear-cut issue as to
whether or not the killing was intentional. There is no
issue as to whether or not it was done with a deadly
weapon. That was undisputed. The effect of the court's
charge on murder in the second degree, when taken as a
whole, was to put the burden on the State to prove beyond
a reasonable doubt that the defendant was guilty of mur-
der in the second degree—that is, of the crime of inten-
tionally shooting Logan with a gun, which act resulted in
his death—and to tell them that, unless the evidence con-
vinced them beyond a reasonable doubt that the killing.
was intentional, they should acquit.

In considering whether or not the defendant was
guilty of murder in the second degree, under the instruc-
tions, the jury were authorized to consider the testimony
of the appellant that his act in shooting Logan was purely
accidental and unintentional. But the instructions did not
shift the burden upon the defendant to prove his inno-
cence. The burden was put upon the State in the whole
case to prove his guilt. The charge upon the whole was
applicable to the facts adduced and was not calculated to
confuse and mislead the jury. It was in conformity with
the statute (sec. 2342, C. & M. Dig.) and the many deci-
sions of this court construing the same.

In the last of these cases, that of *Maddox* v. *State,
ante,* p. 19, we quoted from *Scoggin* v. *State,* 109 Ark. 514,
as follows: "Where' the testimony on behalf of the
State tends to show the killing, and that it was done as
charged in the indictment, if there is nothing in the evi-
dence adduced by the State tending to show that the de-

fendant is guilty of manslaughter, then it devolves upon the defendant to bring forward such testimony if he would have the grade of homicide reduced from murder to manslaughter. In other words, where the killing is proved as alleged, and the testimony on the part of the State does not show mitigation or excuse, or show a lower grade of homicide than murder, then the accused must be convicted unless he produces testimony to convince the jury that he is innocent, or that he is guilty of a less degree of homicide than that of murder. The statute does not shift the burden of proving guilt from the State to the defendant. See also *Wilson* v. *State,* 126 Ark. 354, and cases there cited.

As there is no reversible error, let the judgment be affirmed.