## McFARLAND *v*. STATE.

### Opinion delivered September 29, 1924.

1. CRIMINAL LAW—BURDEN OF PROOF.—Where accused objected to a witness testifying on the ground that she was his wife, it devolved upon him to prove such fact.

2. CRIMINAL LAW—FAILURE TO SUBMIT QUESTION TO JURY.—Failure of the trial court to submit the question of the competency of a witness to the jury was not reviewable in the absence of a request therefor.

3. CRIMINAL LAW—HARMLESS ERROR IN EXCLUDING EVIDENCE.—While it was error to exclude testimony of accused in a murder case that a witness who testified in the case against him was his wife, such error was harmless where the jury, by their verdict, gave him the benefit of the sentimental reason that his home had been invaded

by deceased in his absence by finding him guilty of manslaughter only.

4.   HOMICIDE—INSTRUCTION AS TO RIGHT TO DEFEND HABITATION.—An instruction as to accused's right to kill in self-defense, or in defense of his habitation, was properly refused where, at the time of the killing, accused was neither defending his habitation nor resisting an assault.

Appeal from Lee Circuit Court; *E. D. Robertson,* Judge; affirmed.

*R. D. Smith* and *Mann & McCulloch,* for appellant.

*J. S. Utley,* Attorney General, and *John L. Carter,* Assistant, for appellee.

McCULLOCH, C. J.  The grand jury of Lee County returned an indictment against appellant for the crime of murder in the first degree, alleged to have been committed by shooting and killing Theodore Williams.  On the trial of the cause appellant was convicted of manslaughter, and his punishment fixed at four years in the penitentiary.

The killing occurred at night, in a house in Marianna, where appellant lived with a women named Velma, whom he claimed to have married.  They had lived together for about seven years, but Velma testified that she had never been married to appellant.  They were all negroes, and the shooting occurred in a room that had been rented to another woman named Annie Taylor, adjoining the room occupied by appellant and Velma.

At the beginning of the trial the State offered to introduce Velma as a witness, and appellant objected on the ground that she was his wife.  The court permitted testimony to be introduced on the preliminary question as to the competency of the witness, but ruled that the burden was on appellant to show that the woman was his wife, and therefore incompetent.  This ruling is assigned as error, but we are of the opinion that the court was correct.  Appellant interposed an objection to the competency of the witness on the ground of his alleged intermarriage with her, and it devolved upon him to establish the grounds of incompetency.  This required affirmative

testimony, and the State was not bound to prove the negative. The court overruled the objection, and, as before stated, permitted Velma to testify. She gave an account of the killing, and her testimony coincided with the testimony of the other woman, Annie Taylor, who lived in the adjoining room.

It appears from the testimony that appellant and Velma had rented the house in question and had been living there for nearly a year. Appellant worked on a farm and lumber camp several miles from town, and usually came to town on Saturday and stayed over until Monday with Velma. They shared the expenses of the house jointly, and, according to witnesses, they appeared to be living together as husband and wife, and Velma bore appellant's name of McFarland.

On the night that the killing occurred, according to the testimony of Velma, appellant came home about ten o'clock and knocked on the door, and, on being admitted, had a pistol in his hand, and stated that some one was in the room with her. She testified that Theodore Williams had been in the room a short time before, but had not been in bed with her, and that he had been accustomed to coming there when appellant was at home. Williams had, a short time before, gone into the adjoining room occupied by Annie Taylor. Appellant went into one of the rooms occupied by Annie, and, not finding Williams there, he went to the door of the other room and tried to push it open, but it was propped, and he fired through the door, and the shot took effect in Williams' body. Williams got out of the house through a window and fled from the premises, but died from the effects of the wound.

Appellant himself gave a different account of the story. He testified that, when he knocked on the door, he had to do so repeatedly, and finally his wife, as he called Velma, answered and told him to wait a minute, and when she finally opened the door he saw that something was wrong. He said that he did not have a pistol, but that he found a pistol lying on the center-table in the room, and he discovered that some one had recently

left the room.   He testified that he went into the room of Annie Taylor, and that Williams, who was in another one of Annie's rooms, threatened to shoot if he entered, and that he fired a shot through the door.

During the examination of appellant as a witness he was asked to state whether or not he was married to Velma, but the court sustained the objection of the prosecuting attorney to this question.   Throughout his testimony, however, appellant referred to Velma as his wife, and no further objection was made.

The court properly decided, as a preliminary, the question of the competency of Velma as a witness.   It is unnecessary to determine whether or not appellant, notwithstanding the court's decision, had the right to have that question submitted to the jury, for no request was made for the submission of that question.   Counsel for appellant were content with saving an exception to the court's refusal to allow appellant to testify that Velma was his wife.   This was after she had been permitted to testify and give her version of the circumstances attending the killing.   We are of the opinion that appellant was entitled to make the statement to the jury that the woman was his wife, for it had a bearing on the issues in the case as to the rights of the parties in enjoying the premises, and the motive of appellant in attempting to expel Williams from the house.  Our conclusion, however, is that no prejudice resulted from this ruling of the court.   The verdict of the jury found appellant guilty only of the crime of manslaughter, though the punishment was fixed at more than the minimum.   The jury evidently gave appellant the benefit of the established fact that the killing occurred at the home of appellant, where he and Velma were living apparently in the relation of husband and wife, even though they were not legally married, and the jury evidently gave appellant the benefit of the sentimental reason that his home had been invaded in his absence.   The jury evidently took these facts into consideration in finding appellant guilty of a lower offense of homicide and fixing the punishment at a

period of imprisonment not up to the maximum allowed by law. Appellant's own testimony is hardly sufficient to show a legal justification for the killing, for it was not done in necessary self-defense. It is true he states that Williams cried out in the back room of Annie Taylor's part of the premises that he would shoot if appellant went into the room, but there was no effort made to shoot, and it is not shown that Williams was armed. The room where Williams was at the time he was shot was not one over which appellant had any control, for it had been rented to Annie Taylor, and appellant had no legal right to go into that room to expel Williams therefrom, even though the latter had previously violated appellant's rights by being in the room with the woman whom he claims to be his wife. Considering all of these circumstances, our conclusion is that there was no prejudice in the court's refusal to allow appellant to testify directly that the woman was his wife.

Error is assigned in the refusal of the court to give the following instruction:

"1. You are instructed that, if defendant had reason to believe that he would probably be attacked by the deceased in defendant's own home, then, as a matter of law, he had a perfect right to arm himself and prepare for his defense; and if the defendant, situated as he was, viewing the facts and circumstances as they appeared to him and from his viewpoint, and had reason to believe and did believe that he was in imminent and immediate danger of losing his life or receiving some great bodily harm at the hands of the deceased, and in good faith, without negligence on his part, he shot and killed deceased, then such killing would in law be justified, and you should acquit the defendant."

This instruction is based, it will be observed, upon the hypothesis that the killing was done in defense of habitation, but the instruction is not applicable, for such are not the facts of the case. According to the undisputed evidence, when appellant went into his own part of the premises, Williams had retired from the room and was

then in a room occupied and controlled by Annie Taylor, over which appellant had no control. Appellant was therefore not engaged in the defense of his home at the time he attempted to follow Williams into another part of the premises. Nor is it claimed that he was resisting an attack at the time he fired the shot at Williams. All that he claims is that, while he was attempting to get into the room where Williams was, the latter threatened to kill him if he came in. This did not give him the right to fire the shot, for, as before stated, he was neither defending his habitation nor resisting an assault.

The court gave another instruction at the request of appellant, telling the jury that it was not essential, to justify the killing, that it should appear to the jury to have been necessary, but that, if it appeared to the accused, without fault or carelessness on his part, that the danger was so urgent and pressing as to make the killing necessary, to save his own life, then he would be justified. This instruction was sufficient.

These are the only assignments of error that are argued in the brief, and we assume that there are no other assignments relied on.

There is no error in the record, and the judgment is affirmed.