NEWSOME *v.* STATE.

4523                                          214 S. W. 2d 778

Opinion delivered November 8, 1948.

Rehearing denied December 6, 1948.

*John C. Sheffield,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ED. F. McFADDIN, Justice. Appellant, indicted for murder in the first degree[1] for the homicide of Richard Bishop, was convicted of murder in the second degree;[2] and brings this appeal. The motion for new trial contains five assignments which we discuss in two topic headings.

I. *Sufficiency of the Evidence.* Assignments 1, 2 and 3 present this issue. Richard Bishop and his wife lived in a three-room house several miles from Helena. Some time before noon on November 22, 1947, they went to Helena in a truck in company with Bob Hill, Mary Ellen Jackson, the appellant, and several others. Beer or whiskey was consumed by those named. Mrs. Bishop and Mary Ellen Jackson went to the picture show about 2:00 p. m. Hill and Bishop went to a pool hall, where there was a quarrel between Bishop and Sterling Newsome, being the continuation of a previous encounter. Later, Hill and Bishop joined Mrs. Bishop and Mary Ellen Jackson in the picture show; and after the show Bishop and Newsome had another quarrel. Then Mr. and Mrs. Bishop, accompanied by Hill and Mary Ellen Jackson, returned to the Bishop home, arriving about 7:30 p. m., where more intoxicants were consumed along

---

[1] Section 2969, Pope's Digest, is Ark. Stats., (1947) § 41-2205.
[2] Section 2970, Pope's Digest, is Ark. Stats., (1947) § 41-2206.

with a meal. It was a dark, rainy night, but someone was seen to pass outside the window of the Bishop house. At about 8:30 p. m. a voice on the outside called, "Come on, Shorty,[3] I'm ready to go." Bishop opened the wooden front door, and a load of shot coming through the screen door struck him in the heart, and caused his death almost instantaneously. The assailant fled towards the rear of the house, and fired another shot.

Hill immediately notified the officers who arrested Newsome at his home about one-quarter of a mile from the Bishop home. It was nearly midnight when the officers reached Newsome's home. They found him fully dressed, and his clothes were wet. His shotgun was found to have been recently fired, and two empty shells were found, one at the front and the other at the rear of the Bishop house. Newsome admitted to the officers that he had shot Bishop. Another witness testified that on the return trip from Helena, Newsome had muttered: "I'll blow his brains out before sun-up in the morning." This same witness testified that shortly after Newsome's arrest, he admitted killing Bishop.

Newsome's defenses were: (1) his intoxication; (2) his anger because Bishop had made improper advances towards Mary Ellen Jackson, Newsome's daughter; and (3) his fear because Bishop had told Newsome he would kill him on the following day. These defenses were not fully credited by the jury. As to the actual shooting, Newsome professed to have been too intoxicated to remember it; but witnesses for the State negatived the extent of this intoxication. Without further detailing of the evidence, it is clear that it was sufficient to sustain the verdict. In *Weakley* v. *State*, 168 Ark. 1087, 273 S. W. 374, Mr. Justice Wood, speaking for this court, quoted Bishop on Criminal Law: " 'The intention to drink may fully supply the place of malice aforethought so that, if one voluntarily becomes too drunk to know what he is about and then with a deadly weapon kills another, he does murder the same as if he were sober. In other words, the mere fact of drunkenness will not reduce to manslaughter a homicide which would otherwise be mur-

---

[3] Bishop was called "Shorty."

der.' Bishop's New Criminal Law, p. 296, § 401." See, also, *Ballentine* v. *State,* 198 Ark. 1037, 132 S. W. 2d 384, and other cases cited in West's Arkansas Digest, "Homicide," § 28.

II. *Instructions.* The quotation from *Weakley* v. *State, supra,* disposes of appellant's assignment No. 4, which relates to a requested instruction concerning "malice" when the killer is intoxicated. The court instructed as to first degree murder, second degree murder and voluntary manslaughter; and the fifth and final assignment in the motion for new trial relates to the refusal of the court to instruct on involuntary manslaughter. Section 2982, Pope's Digest (Ark. Stats., (1947) § 41-2209) defines involuntary manslaughter: "If the killing be in the commission of an unlawful act, without malice, and without the means calculated to produce death, or in the prosecution of a lawful act, done without due caution and circumspection, it shall be manslaughter."

In the case at bar the undisputed facts negative involuntary manslaughter, because (1) the drinking supplied the malice, and (2) the killing was done with a shotgun, which is certainly "the means calculated to produce death." So, based on the statutory definition of involuntary manslaughter, the trial court was correct in refusing to charge concerning that grade of homicide in this case. See, also, *Weakley* v. *State, supra.*

Furthermore, the verdict of guilty of murder in the second degree shows that the jury viewed the homicide as more than voluntary manslaughter. Any supposed error for failure to charge as to involuntary manslaughter was rendered harmless by the fact that the jury convicted Newsome of second degree murder. See *Farris* v. *State,* 54 Ark. 4, 14 S. W. 924; *Nash* v. *State,* 73 Ark. 399, 84 S. W. 497; *Jones* v. *State,* 102 Ark. 195, 143 S. W. 907; and *Outler* v. *State,* 154 Ark. 598, 243 S. W. 851.

Finding no error, the judgment of the lower court is in all things affirmed.