TALLEY *v.* STATE.

5050                                                    370 S. W. 2d 604

Opinion delivered September 23, 1963.

[Rehearing denied October 21, 1963.]

*N. L. Schoenfeld,* for appellant.

*Bruce Bennett,* Attorney General, by *John P. Gill,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, J. In September of 1960 the appellant shot and killed her seventeen-year-old granddaughter, Carolyn Talley. Tried for murder in the first degree the appellant was found guilty of murder in the second degree and was sentenced to imprisonment for five years. We discuss the more serious points raised in the motion for a new trial.

The evidence is amply sufficient to support the conviction. On the evening in question the appellant was acting as a baby sitter in the home of Mrs. Elaine Terry, in Hot Springs. In going to the Terry home the appellant was accompanied by another granddaughter, Julie Ann Talley, the younger sister of the deceased. Upon this occasion the accused carried a loaded pistol in her purse—for the purpose, she testified, of protecting herself if anyone should try to break into the Terry home.

There is a sharp conflict in the testimony about the homicide itself. At about 7:30 p.m. the appellant's daughter-in-law, who was separated from the appellant's son, drove up to the Terry home, accompanied by her daughter Carolyn. The appellant says that when the car appeared Julie Ann and one of the two Terry children ran into the house, in a state of alarm. The appellant took the pistol from her purse, turned out the lights, and latched the front screen door. According to the appellant, Carolyn came up on the porch, jerked at the screen door, and cursed the appellant, who was sitting just inside the door. Mrs. Talley insisted at the trial that she had no intention of harming her granddaughter, to whom she was devoted. She gave two versions of the shooting, one that the gun went off accidentally, the other that she tried to scare Carolyn by firing up into the air. The bullet entered the child's left eye and apparently caused her instant death.

A decidedly different account is given by Carolyn's mother. She states that she and her daughter happened to be driving in the neighborhood when they saw Julie Ann in the Terry yard. Carolyn had not seen her sister for some time and went to the front door for the purpose of having a visit with her. The younger Mrs. Talley tes-

tified that just before the shot was fired she heard her mother-in-law say: ''I'll teach you not to come up here.'' The jury were at liberty to accept the State's proof as being the truth. That proof fully supports the verdict, for it puts the accused in the position of having deliberately shot a defenseless child with hardly even a semblance of provocation.

The older Terry child was thirteen and the younger one eleven when the homicide occurred. At the trial, more than a year later, they were both called as defense witnesses. On cross-examination the prosecuting attorney was permitted to test their credibility by questioning them about statements made by them to the investigating officers soon after the crime took place. This cross-examination was objected to, on the ground that the State had not shown that the children were competent witnesses at the time they were interrogated by the officers or that their parents were present.

The objection was without merit. By offering the children as witnesses the defense in effect represented to the court that they were competent to testify about what they had observed on the night of the homicide. The trial court properly refused to allow the accused to take advantage of the children's favorable testimony upon the theory that they were competent witnesses and at the same time disavow their unfavorable testimony upon the theory that they were not. The circumstances under which the children were questioned by the officers were pertinent, as tending to weaken the State's attack upon their credibility, but those circumstances did not render inadmissible the fact that they had made inconsistent statements out of court.

Complaint is made of the trial court's refusal to give two instructions requested by defense counsel. Even if we assume that proper exceptions were saved to the court's action we find no prejudicial error. The first requested instruction would have explained one's right to take life in the defense of a habitation. This charge was properly refused, because the evidence did not justify it. *McFarland* v. *State,* 165 Ark. 431, 264 S. W. 938. Accord-

ing to the appellant's testimony she was not attempting to defend the habitation, for she insists that she did not mean to shoot at Carolyn. And if the jury accepted the State's testimony, which indicated that the killing was deliberate, the cold-blooded attack upon an unarmed and helpless child could not possibly have been justified by any supposed necessity for defending the Terry home.

The other requested instruction would have given the jury the option of finding the accused guilty of involuntary manslaughter. The court elected to submit only the offenses of first degree murder, second degree murder, and voluntary manslaughter. In view of the verdict the error, if any, was harmless. As we said in *Newsome* v. *State,* 214 Ark. 48, 214 S. W. 2d 778, "Any supposed error for failure to charge as to involuntary manslaughter was rendered harmless by the fact that the jury convicted [the accused] of second degree murder."

Affirmed.