Terry WHITTIER *v.* STATE of Arkansas

CA CR 03-509                                    141 S.W.3d 924

Court of Appeals of Arkansas
Division II
Opinion delivered January 21, 2004

*Bart Ziegenhorn*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y
Gen., for appellee.

JOHN F. STROUD, JR., Chief Judge. Appellant, Terry Whittier, was tried by a jury and found guilty of the offense of first-degree murder. He was sentenced to forty years in the Arkansas Department of Correction. His sole point of appeal is that the trial court erred in denying his requested manslaughter instruction. We agree and therefore reverse and remand.

Officer David Reynolds testified that around 4:00 a.m. on August 22, 2002, he was dispatched to the 500 block of South 13th Street in West Memphis to respond to a call of multiple gun shots. He stated that he located "a downed subject," Austin Kirkwood, on the front porch of 507 South 13th Street. He said that he did not find appellant at the scene.

Detective Ken Mitchell testified that he and Detective Smith arrived at the scene between 4:30 and 5:00 a.m. He said that the only persons they talked to that morning were the victim's uncle and the uncle's girlfriend, who both lived at the house and were inside the house at the time of the shooting. Neither the uncle nor the girlfriend had any information about what had happened. Mitchell said that over the next few weeks, however, appellant was developed as a suspect. He further explained that a man named Steven Briscoe came to his office and said that he could get some incriminating information for Mitchell. Mitchell said that they wired Briscoe for the purpose of recording a conversation between Briscoe and appellant. He said that after a taped conversation between Briscoe and appellant was obtained, appellant was arrested. Mitchell testified that appellant initially denied any involvement, but that after they played a portion of the taped conversation for him, he acknowledged shooting Kirkwood.

Mitchell recounted that appellant told him that he and Kirkwood approached each other on the street; that Kirkwood had a firearm and fired the gun twice; and that it then seemed as if Kirkwood's gun jammed. Appellant told Mitchell that he pulled out a gun at that point and fired a shot at Kirkwood as Kirkwood turned and was running toward his house. Mitchell said that appellant told him that he had gotten the gun from another person and did not want to involve anyone else in the situation. Mitchell further explained that he was present at the scene when Kirkwood's body was turned over; that a semi-automatic pistol was in his waistband; and that it was completely empty when they found it.

Detective Brian Shelton testified that he was involved in the investigation, that they found a sock containing live ammunition in one of the bedrooms of the residence at 507 South 13th Street, and that those bullets would have fit the gun carried by Kirkwood. He acknowledged that they did not conduct a gunshot-residue test on Kirkwood's hands.

After both sides rested, the defense made its record on the request to have the jury instructed on manslaughter. Defense counsel contended:

> The prong which I am submitting is that Terry Whittier, Jr., caused the death of Austin Kirkwood under circumstances that would be murder, except that he caused the death under the influence of extreme emotional disturbance for which there was a reasonable excuse. To determine the reasonableness of the excuse from the viewpoint of a person in Terry Whittier's situation, under the circumstances as he believed them to be. If I can incorporate that I think I won't have to submit any instruction, and I will submit the instruction based on the facts in the case.
>
> The facts in the case are that Terry Whittier, Jr., had a gunshot in his direction, the gun then clicked and he reacted. I think that there is evidence in the record that suggests that Terry Whittier, Jr., was acting in the heat of the moment, after being shot at to justify, and a reasonable juror could conclude that due to the state of mind, that his reaction to what had happened as opposed to be able to reflect and formulate the mental state, and acted in a heightened type situation after having gunshots fired toward him.

The trial court denied the request to instruct on manslaughter.

Our supreme court has frequently stated that it is reversible error to refuse to instruct on a lesser-included offense when there is the slightest evidence to support the instruction. *Morris v. State*, 351 Ark. 426, 94 S.W.3d 913 (2003). The supreme court has further made it clear that we are to affirm a trial court's decision not to give an instruction on a lesser-included offense if there is no rational basis for giving the instruction. *Id.* In *Rainey v. State*, 310 Ark. 419, 421, 837 S.W.2d 453, 454 (1992), the supreme court recited the following pertinent facts of the case:

Upon walking into the front room, Rainey testified he saw Kirkpatrick pointing the pistol at him. He grabbed her hand, pointed the gun toward the ceiling, and a shot fired. Police later recovered a bullet from the ceiling. Rainey then took the gun away from Kirkpatrick and shot her four times in the head as she was falling to the floor. He testified that after the first shot he was so hysterical that he kept firing. The entire incident, according to Rainey, took one or two seconds.

Rainey admitted he did not shoot Kirkpatrick in self defense. He stated, "I just went hysterical," and "I was already mad and I just took the gun away from her and shot her." Rainey said he killed Kirkpatrick out of anger because she had threatened to tell his wife about their affair and had tried to shoot him.

The court further explained in its opinion that the trial court instructed the jury on first- and second-degree murder but refused to instruct on manslaughter, and that in the process of reaching the decision that a manslaughter instruction was unnecessary, the trial court stated that the killing was not motivated by self defense and that Rainey intended to kill the victim. The supreme court concluded in *Rainey* that the trial court erred in refusing to give the manslaughter instruction because there was a rational basis for giving it. The court explained:

Rainey's proffered manslaughter instruction is based upon Ark. Code Ann. § 5-10-104(a) (1987), which provides in part:

(a) A person commits manslaughter if:

(1) He causes the death of another person under circumstances that would be murder, except that he causes the death under the influence of extreme emotional disturbance for which there is a reasonable excuse. The reasonableness of the excuse shall be determined from the viewpoint of a person in the defendant's situation under the circumstances as he believes them to be;

* * * * * *

(3) He recklessly causes the death of another person; ....

When there is a rational basis for a verdict acquitting a defendant of the offense charged and convicting him of an offense included in the offense charged, an instruction on the lesser included offense should be given, and it is reversible error to fail to give such an instruction when warranted. *Sanders v. State*, 305 Ark. 112, 805 S.W.2d 953 (1991); Ark. Code Ann. § 5-1-110(c) (1987). When there is the *slightest* evidence to warrant an instruction on a lesser included offense, it is error to refuse to give it. *See, e.g., Henson v. State*, 296 Ark. 472, 757 S.W.2d 560 (1988); *Robinson v. State*, 269 Ark. 90, 598 S.W.2d 421 (1980) (emphasis added).

In this case, there was evidence which would support a finding that, although Rainey admittedly purposely killed Kirkpatrick and thus committed what would otherwise have been murder, he did so under the influence of extreme emotional disturbance for which there was a reasonable excuse. The jury was presented with evidence that Kirkpatrick had attempted to kill Rainey just before he shot her. There was testimony that Kirkpatrick had threatened to tell Rainey's wife about his affair. Rainey testified that at the time of the shooting he was "hysterical," "upset," and "mad." There was thus some evidence to support the manslaughter instruction.

In a recent case, *Frazier v. State*, 309 Ark. 228, 828 S.W.2d 838 (1992), Frazier admitted killing the victim but stated he did so because the victim teased him. The Trial Court denied Frazier's request for a manslaughter instruction, and we affirmed. There was no evidence that Frazier was acting under the influence of an extreme emotional disturbance. His irritation over being teased did not constitute evidence of an extreme emotional disturbance for which there was a reasonable excuse.

The *Frazier* case is readily distinguishable from this one. *Here, evidence indicated that Rainey had been threatened with a gun before the killing occurred which, combined with the ongoing argument and the threat to ruin his family relationship, could well have been considered by the jury to have caused him to suffer extreme emotional distress, especially when viewed from his perspective as the statute requires.* There is a substantial difference between the emotional effect of being teased and being threatened with a gun.

*Id.* at 422-23, 837 S.W.2d at 455-56 (emphasis added).

■ Here, there was evidence that Kirkwood had fired at appellant twice before Kirkwood's gun jammed and appellant pulled his own gun and shot Kirkwood. We find that there was a rational basis for giving the manslaughter instruction in the instant case and that the trial court erred in refusing the instruction.

The State does not really dispute error in this regard. Rather, it relies upon the "skip rule," contending that without respect to whether the jury should have been instructed as to manslaughter, "[appellant] cannot prevail because he was convicted of first-degree murder, and not of the lesser-included offense of second-degree murder with which the jury was instructed and that it would have had to consider before considering manslaughter. Thus, . . . any error in failing to instruct the jury as to manslaughter is cured . . . ." We disagree with the State's position in this regard.

■ The State relies upon *Winbush v. State*, 82 Ark. App. 365, 107 S.W.3d 882 (2003). While *Winbush* states the general rule that "[w]hen the jury convicts of a greater offense and 'skips' a lesser-included offense, there can be no error in failing to instruct on other even lesser-included offenses," *id*. at 370, 107 S.W.3d at 885, it is important to note that the opinion cites *Rainey v. State*, *supra*, as support for that proposition. In *Rainey* the supreme court gives a more complete explanation of the "skip rule":

> A remaining issue is whether the Trial Court's failure to instruct on manslaughter was prejudicial. As a general rule, when the jury convicts a defendant of first degree murder, even though an instruction on the lesser included offense of second degree murder has been given, any error resulting from the failure to instruct on the still lesser included offense of manslaughter is cured. *See, e.g., Easter v. State*, 306 Ark. 615, 816 S.W.2d 602 (1991); *Taylor v. State*, 303 Ark. 586, 799 S.W.2d 519 (1990). This is commonly referred to as "the skip rule." When the jury convicts of a greater offense and "skips" a lesser included offense, there can be no error in failing to instruct on other even lesser included offenses.
>
> Rainey argues the skip rule should only apply when the lesser included offense for which an instruction was denied refers to a mental state one step less culpable than the instructed offenses. In other words, the skip rule only applies when the instructed and

non-instructed offenses are described in degrees of culpability, and the lesser are indeed "included" in those for which the punishment is greater.

No doubt we have applied the skip rule when a trial court failed to instruct the jury on manslaughter, and the jury returned a verdict of murder in the first degree, thereby skipping the lesser included offense of murder in the second degree. We have done so without reference to the type of manslaughter instruction involved or the mental state necessary for the offense. *See, e.g., Easter v. State, supra; Taylor v. State, supra.* Our opinions in those cases, however, do not show that the argument being made here was raised. This is our first opportunity to consider it.

Had Rainey requested an instruction asking the jury to consider whether he was guilty of "recklessly causing the death of another person," another offense included in the manslaughter statute, we would probably hold that the skip rule applied. That is so because recklessness is a less culpable mental state than purposefulness, and it fits within the chain. It is a truly lesser included offense. *His argument is, however, that having requested an instruction based on purposely causing the death of another person "under the influence of extreme emotional disturbance," the skip rule does not apply. He confesses to having purposely killed the victim, but the manslaughter law, in one of its aspects, adds another element which does not fit in the chain — that of extreme emotional disturbance. One can kill purposely or knowingly, as in first and second degree murders, and yet be guilty only of manslaughter because of extreme emotional disturbance for which there is a reasonable excuse. We agree with his argument.*

The rationale given in the cases which developed what we now refer to as "the skip rule" was that no prejudicial error results from failing to instruct the jury on a lesser included offense if the jury found a state of facts to which the instruction would be inapplicable. *Farris v. State,* 54 Ark. 4, 14 S.W. 924 (1890); *Jones v. State,* 102 Ark. 195, 143 S.W. 907 (1912); *Newsome v. State,* 214 Ark. 48, 214 S.W.2d 778 (1948). In other words, even if the lesser included offense instruction had been given, the jury would still have convicted the defendant of the greater offense.

*The fact that the jury found Rainey guilty of first degree murder and skipped the lesser included offense of second degree murder does not necessarily mean they found a state of facts to which his requested man-*

*slaughter instruction would be inapplicable. Whether we say that manslaughter as defined in 5-10-104(a)(1) is not a lesser included offense in first and second degree murder because it adds an element or conclude that there is an exception to the skip rule, the result is the same. The evidence before the court entitled Rainey to the manslaughter instruction. The jury could have found that although Rainey purposely killed Kirkpatrick, he did so under the influence of extreme emotional disturbance for which there was a reasonable excuse. The failure to give the jury the opportunity to consider the manslaughter instruction, which we conclude to have been justified by the evidence, was thus prejudicial.*

Rainey v. State, 310 Ark. at 424-26, 837 S.W.2d at 456-57 (emphasis added).

We find the situation presented in the instant case to closely resemble that in *Rainey*. Appellant requested the manslaughter instruction based upon the premise that he caused Kirkwood's death under the influence of extreme emotional disturbance for which there was a reasonable excuse. The evidence before the court entitled appellant to the manslaughter instruction, and the failure to give the jury the opportunity to consider it was prejudicial.

Reversed and remanded.

HART and GLADWIN, JJ., agree.